LATCHFORD GLASS CO. *v.* UNITED STATES (BUCKINGHAM CORPORATION, APPEARING AS PARTIES IN INTEREST) (No. 4094) [1]

[1] T. D. 49305.

United States Court of Customs and Patent Appeals, November 22, 1937

*Lamb & Lerch* (*John G. Lerch* and *Kenneth G. Osborn* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Samuel M. Richardson* of counsel) for parties in interest.

[Oral argument October 13, 1937, by Mr. Osborn, Mr. Samuel M. Richardson, and Mr. John G. Lerch]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges [1]

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, dismissing the protest of appellant, an American manufacturer, against the decision of the collector at the port of New York holding that, inasmuch as the bottles in which wine was imported were marked so as to indicate the country of origin of the wine, it was not necessary that they be marked so as to indicate the country of their origin.

The protest was filed under the presumed authority of section 516 (b) of the Tariff Act of 1930, and, so far as pertinent, reads:

We hereby protest your decision and assessment of duty on an importation of wine in glass bottles by the Buckingham Corporation, 620 Fifth Avenue, New York,

---

[1] Graham, Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.

New York, the particulars of which importation are as follows: [The entry number, the vessel, the date of arrival, and the date of liquidation are then listed.] Specific reference to this importation was made by you in your communication to Lamb & Lerch under date of August 17th, 1935.

Objection to your action is based upon the fact that the glass bottles were not marked to indicate the country of their origin in accordance with the provisions of Section 304 of the Tariff Act of 1930.

We claim:

(1) That the bottles are articles within the meaning of Sec. 304 of the Tariff Act of 1930, by virtue of the provisions of paragraphs 217 and 810 of said act.

(2) That even as containers for the wine they are required by said Section 304 to be marked to indicate the country of their origin.

(3) That until the bottles independently of their contents are so marked to indicate the country of their origin as required by said Section 304 you should withhold delivery under said Section 304.

Respectfully,

BAIRD MARBLE,
*Vice-President Latchford Glass Company,*
*74–41 So. Roseberry Ave., Los Angeles, Calif.*
AMERICAN MANUFACTURER,
*Producer and Wholesaler,*
By LAMB & LERCH, *Attorneys.*

The pertinent part of the report of the collector in answer to appellant's protest reads:

This protest is directed by the Latchford Glass Co. of Los Angeles against the action of the collector in permitting release from Customs Custody of certain bottles filled with wine without requiring them to be marked to show their own country of origin in addition to marking to show origin of contents.

It will be noted from the Appraiser's special report herewith that the bottles were marked with the country of origin of their contents, and that following T. D. 47716, the usual containers are not required to be marked to indicate their own origin.

Accordingly, this office took no action under Section 304 of the Act of 1930 and in liquidation assessed only the $1.25 per dozen rate to the contents which were subject under Paragraph 804 of the Act of 1930 and one third of the rate provided for glass bottles in paragraphs 217 and 810 of said act.

The statutory provisions here involved read:

SEC. 304. MARKING OF IMPORTED ARTICLES.

(a) MANNER OF MARKING.—Every article imported into the United States, and its immediate container, and the package in which such article is imported, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place, in such manner as to indicate the country of origin of such article, in accordance with such regulations as the Secretary of the Treasury may prescribe. Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. The Secretary of the Treasury may, by regulations prescribed hereunder, except any article from the requirement of marking, stamping, branding, or labeling if he is satisfied that such article is incapable of being marked, stamped, branded, or labeled or can not be marked, stamped, branded, or labeled without injury, or except at an expense economically prohibitive of the importation, or that the marking, stamping, branding, or labeling of the immediate container of such article will reasonably indicate the country of origin of such article.

(b) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, collected, and paid on such article, unless exported under customs supervision, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof.

(c) DELIVERY WITHHELD UNTIL MARKED.—No imported article or package held in customs custody shall be delivered until such article (and its container) or package and every other article (and its container) or package of the importation, whether or not released from customs custody, shall have been marked, stamped, branded, or labeled in accordance with the requirements of this section. Nothing in this subdivision shall be construed to relieve from the requirements of any provision of this Act relating to the marking of particular articles or their containers.

## SEC. 516. APPEAL OR PROTEST BY AMERICAN PRODUCERS.

*      *      *      *      *      *      *

(b) CLASSIFICATION.—The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of and the rate of duty, if any, imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary of the Treasury setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. If the Secretary decides that the classification of or rate of duty assessed upon the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform such manufacturer, producer, or wholesaler, and such rate of duty shall be assessed upon all such merchandise imported or withdrawn from warehouse after thirty days after the date of such notice to the collectors. If the Secretary decides that the classification and rate of duty are correct, he shall so inform such manufacturer, producer, or wholesaler, and shall, under such regulations as he may prescribe, cause publication to be made of his decision, together with notice that the classification of and the rate of duty on all such merchandise imported or withdrawn from warehouse after the expiration of thirty days after such publication will be subject to the decision of the United States Customs Court in the event that a protest is filed under the provisions of this subdivision. If dissatisfied with the decision of the Secretary, such manufacturer, producer, or wholesaler may file with him a notice that he desires to protest the classification or the rate of duty imposed upon the merchandise, and upon receipt of such notice the Secretary shall furnish him with such information as to the entries and consignees of such merchandise, entered after the expiration of thirty days after the publication of the decision of the Secretary, at the port of entry designated by the manufacturer, producer, or wholesaler in his notice of desire to protest, as will enable him to protest the classification of or the rate of duty imposed upon such merchandise when liquidated at such port. The Secretary shall direct the collector at such port to notify such manufacturer, producer, or wholesaler immediately upon the liquidation of the first of such entries to be liquidated. Such manufacturer, producer, or wholesaler may file, within thirty days after the date of such liquidation, with the collector of such port a protest in writing setting forth a description of the merchandise and the classification and the rate of duty he believes proper. Upon the filing of any such protest the collector shall notify the Secretary of the Treasury who shall order

the suspension, pending the decision of the United States Customs Court upon such protest, of the liquidation, at all ports, of all unliquidated entries of such merchandise imported or withdrawn from warehouse after the expiration of thirty days after the publication of the Secretary's decision. All entries of such merchandise so imported or withdrawn shall be liquidated, or if already liquidated, shall, if necessary, be reliquidated, in conformity with such decision of the United States Customs Court. If, upon appeal to the Court of Customs and Patent Appeals, the decision of the United States Customs Court is reversed, the classification of the merchandise and the rate of duty imposed thereon shall be in accordance with the decision of the Court of Customs and Patent Appeals, and any necessary reliquidation shall be made. The provisions of this subdivision shall apply only in the case of complaints filed after the effective date of this Act.

At the time this cause came on for trial in the United States Customs Court, counsel for the Buckingham Corporation, the importer of the merchandise the subject of this controversy and one of the appellees, moved to dismiss the protest for the following reasons: That it was invalid because the conditions precedent to its filing, required by the provisions of sections 516 (b), *supra*, had not been complied with; that it was invalid because it was not signed by the protestant, an American manufacturer, producer, or wholesaler, but by an alleged agent of such protestant; that it was not directed to the collector's classification and the rate or rates of duty assessed against the imported merchandise, but was limited to the claim that the collector should withhold delivery of the merchandise in customs custody until the bottles in which the imported wine was contained were marked so as to indicate the country of their origin as provided in subsections (a) and (c) of section 304, *supra*.

Due to the views we hold, it is unnecessary for us to consider two very interesting questions presented by counsel for the Buckingham Corporation; namely, first, whether Baird Marble or the Latchford Glass Co. is the protestant, and, second, whether counsel for an American manufacturer, producer, or wholesaler, duly authorized in the premises, may, under the provisions of section 516 (b), sign the complaint, the notice of protest, and the protest for and on behalf of such manufacturer, producer, or wholesaler.

In its decision dismissing the protest, the trial court stated, in substance, that the protest was not directed to the classification of the imported bottles and the rate or rates of duty assessed against them; that it was limited solely to the proposition that the collector should not release such bottles from customs custody without requiring them to be marked so as to indicate the country of their origin; and that, therefore, it presented no justiciable issue.

In so holding, the trial court called attention to the decisions of this court in the cases of *Kraft Phenix Cheese Corp.* v. *United States*, 22 C. C. P. A. (Customs) 111, T. D. 47103, and *Givaudan Delawanna, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 115, T. D. 47104,

wherein it was held, among other things, that if either an imported article or its container was marked so as to indicate the country of origin of the imported article, as provided in subsection (a) of section 304, *supra*, the 10 per centum ad valorem rate of duty provided for in subsection (b) of that section was not applicable, and said:

The record before us shows that the merchandise covered by this entry has been released to the importer after having been classified by the collector as legally marked. *There is no evidence in the record to show that the immediate containers of the bottles herein were not legally marked; and in the absence of any official report to the contrary we presume they were properly marked.* Under those circumstances, no marking duty accrued on the importation, irrespective of whether or not the bottles, as separate *articles*, were legally marked. The record before us shows that no marking duty was assessed on the importation, and the protest makes no claim that such duties should be either assessed or refunded.

\*        \*        \*        \*        \*        \*        \*

For the reasons stated herein, the motion to dismiss this protest *for failure to contain any claim involving the assessment or refund of duties*, is granted. [Except the word "articles," italics ours.]

It will be observed that, in section 516 (b), the Congress has repeatedly used the term "classification" and the phrase "rate of duty" in conjunction with each other. In but one instance is the phrase "rate of duty" used alone, and in no instance is the term "classification" used except in conjunction with the phrase "rate of duty," thus indicating, it seems to us, that the Congress had in contemplation that American manufacturers, producers, or wholesalers would be primarily interested in the rate or rates of duty to be assessed against imported merchandise, and that, of course, in order to determine the proper rate or rates of duty to be assessed against such merchandise the question of classification would be necessarily involved.

In the case of *E. C. Miller Cedar Lumber Co.* v. *United States*, 24 C. C. P. A. (Customs) 272, T. D. 48701, this court in holding that an American manufacturer, producer, or wholesaler had no authority to protest the classification of imported merchandise for the purpose of raising the question as to the *amount*, rather than the *rate*, of duty, among other things, said:

However, whatever its reasons might have been, the Congress did not extend to the American manufacturer the right to protest against the *amount of duty* assessed against imported merchandise, but limited its right of protest to the classification thereof, and the rate or rates of duty assessed thereon. It did not authorize the American manufacturer to protest against the collector's decision as to the weights, measures, and quantities of imported merchandise, nor to challenge the correctness of the collector's orders and findings, unless the proper classification of such merchandise, or the assessment of the proper rate or rates of duty thereon, depended upon such weights, measures, quantities, and orders and findings of the collector. No doubt, the Congress assumed that, unless the classification of imported merchandise, and the rate or rates of duty to be assessed thereon, depended upon the orders and findings entering into the collector's de-

cision, such orders and findings might safely be left to the customs officials, giving the importers only the right to challenge their correctness.

Desiring, however, to give American manufacturers the right to aid in the interpretation and construction of the law, and to give them full protection thereunder, the Congress did provide that such manufacturers might protest against the classification of imported merchandise, and the rate or rates of duty assessed thereon by the collector.

We find nothing in section 516 (b), *supra*, which suggests that the Congress intended to permit an American manufacturer, producer, or wholesaler to protest the collector's classification of imported merchandise for any purpose other than that of raising the issue as to the proper rate or rates of duty, if any, to be assessed. We are of opinion, therefore, that it was the purpose of the Congress, as evidenced by the language of the section in question, to permit an American manufacturer, producer, or wholesaler to protest against the classification of imported merchandise, solely for the purpose of raising the issue as to the proper rate or rates of duty, if any, to be assessed against merchandise of a class or kind manufactured, produced, or sold at wholesale by him, and that it was not the intention of the Congress to authorize the filing of a protest for any other purpose.

In so holding, we are not unmindful of the fact that, in a tariff sense, the term "classification" may, in some instances, have a broader meaning.

It will be observed that if the collector classifies merchandise as not being legally marked, as provided in subsection (a) of section 304, he shall, under subsection (b) of that section, assess the additional duty provided for therein, *in the event neither the article nor its container is legally marked, Kraft Phenix Cheese Corp.* v. *United States, supra; Givaudan Delawanna, Inc.* v. *United States, supra;* whereas, subsection (c) provides that—

No imported *article* or *package* held in customs custody shall be delivered until such article (and its *container*) or *package* and every other *article* (and its *container*) or *package* of the importation, whether or not released from customs custody, shall have been marked, stamped, branded, or labeled in accordance with the requirements of this section. [Italics ours.]

It appears, therefore, that, under the provisions of subsections (b) and (c) of section 304, *supra*, the collector has a dual duty to perform; namely, first, if neither the article nor its container is legally marked, he shall assess the 10 per centum ad valorem duty; second, he shall withhold delivery of such "article or package" until the article and its container or package "and every other article (and its container) or package of the importation" shall have been marked as required by subsection (a) of that section.

We think it is clear from what has been said that, although an American manufacturer, producer, or wholesaler has been afforded the right, under the provisions of section 516 (b), to protest against

the classification of the collector for the purpose of raising the issue of whether the 10 per centum ad valorem rate of duty provided in subsection (b) of section 304 should be assessed against imported merchandise, no authority has been extended to such manufacturer, producer, or wholesaler to protest against the classification of the collector so far as it relates to the delivery or withholding of delivery of merchandise. *E. C. Miller Cedar Lumber Co.* v. *United States, supra.*

It is claimed in the protest in the case at bar that, by virtue of the provisions of paragraphs 217 and 810 of the Tariff Act of 1930, the bottles in which the imported wine was contained are articles within the purview of section 304 (a), *supra;* that they were not marked so as to indicate the country of their origin in accordance with the provisions of that section; that if they be considered merely containers for the wine, and not separate articles, they are required to be marked so as to indicate the country of their origin; and that "until the bottles independently of their contents are so marked to indicate the country of their origin as required by said Section 304" delivery should be withheld under the provisions of that section.

It will be observed that appellant, in its protest, has attempted to raise the issue of whether the collector should have withheld delivery of the imported bottles until they were marked so as to indicate the country of their origin. Having held that the provisions of section 516 (b), *supra,* do not confer any such right upon an American manufacturer, producer, or wholesaler, the next question requiring our consideration is: Does the protest properly raise the issue of whether the imported bottles are subject to the 10 per centum ad valorem rate of duty provided in section 304 (b)?

In the determination of that question we assume the truth of the allegations contained in the protest; i. e., that the bottles are articles within the purview of section 304 (a) and (b), and that they were not marked to indicate the country of their origin, as required by subsection (a) of that section.

As hereinbefore noted, subsection (b) of section 304 provides that the 10 per centum ad valorem duty shall be assessed only in the event neither the article nor its container is legally marked. *Kraft Phenix Cheese Corp.* v. *United States, supra; Givaudan Delawanna, Inc.* v. *United States, supra.*

There is no allegation in the protest that the *containers of the bottles* were not properly marked so as to indicate the country of origin of the bottles. Accordingly, we must assume, for the purpose of this decision, that the containers of the bottles were legally marked so as to indicate the country of origin of such bottles. That being so, the bottles were not subject to the 10 per centum ad valorem rate of duty provided in section 304 (b).

We must hold, therefore, that the protest is not sufficient to raise the issue of whether the imported bottles are subject to the 10 per centum ad valorem rate of duty provided for in section 304 (b).

For the reasons stated, the judgment is *affirmed*.